UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NORMAN CHAPIN, <br><br> Plaintiff, <br><br> v. <br><br> FOREST RIVER, INC. *et al.*, <br><br> Defendants. | CAUSE NO. 3:23-CV-450 DRL |

OPINION AND ORDER

In 2022, Norman Chapin purchased a Forest River recreational vehicle online from an Ohio dealership but soon noticed issues with it. He sued Forest River, Inc. (the manufacturer) and Jeff Couch's Campers, LLC d/b/a Jeff Couch's RV Nation (the dealer) under a California law, the Song-Beverly Consumer Warranty Act, and federal law, the Magnuson-Moss Warranty Act.[1] The defendants request summary judgment, and the court grants the motion.

BACKGROUND

Mr. Chapin purchased a 2022 XLR 35 LRLE travel trailer on March 18, 2022 [34 ¶ 17]. He lives in California [56-1 ¶ 1], but he bought the unit online from Jeff Couch's RV Nation in Trenton, Ohio (Couch's RV) [*id.* ¶ 4; 49 at 2 (Ex. A)]. He signed a two-page purchase agreement with Couch's RV [49 at 2 (Ex. A)]. The purchase agreement contained provisions concerning both title and warranty from Couch's RV. The agreement said title would "remain in the Seller until the agreed purchase price therefor is paid in full in cash" and only then would title pass "to the buyer as of the date of payment even though

---

[1] Mr. Chapin also brought a negligence claim against Forest River. He abandons the negligence claim and agrees to its dismissal. He also agrees to withdraw his objection to the timeliness of the summary judgment motions, mooting a separate motion to strike [52].

the actual physical deliver[y] may not be made until a later date" [*id.*]. The purchase agreement explained that the dealer made no warranties about the unit and expressly disclaimed any implied warranties.[2]

In lieu, the manufacturer, Forest River, provided a one-year limited warranty [*id.* 8 (Ex. B-1)]. This warranty contained an exhaustion provision requiring that the owner provide written notice and an opportunity for Forest River to repair the RV before initiating any legal remedies [*id.* 9 (Ex. B-1)]. It also contained an Indiana choice-of-law provision and a forum selection clause designating Indiana as the required venue for any legal action [*id.* 12 (Ex. B-1)].

Mr. Chapin signed Forest River's "Customer Delivery and Warranty Registration Form," confirming he reviewed the warranty [*id.* 13 (Ex. B-2)].[3] He listed his address in California on both this acknowledgment form and the purchase agreement [*id.* 2 (Ex. A); *id.* 13 (Ex. B-2)]. His purchase agreement included a delivery charge, but another party (Big Daddy) delivered the unit to Mr. Chapin in California on March 28, 2022 [56-1 ¶ 5-6]. Shortly after purchasing the recreational vehicle, Mr. Chapin began experiencing problems with it and sought repairs [34 ¶ 19].

From here, the record seems to get sparse, but the parties agree that Mr. Chapin took the vehicle to Whitaker RV, LLC in California for repairs with the dealer's assistance [57 ¶ 14 (facts undisputed)]. Forest River identifies two times Mr. Chapin took the vehicle for repairs—April 17, 2022 and June 22, 2022 [*id.* ¶ 15-16 (citing 34 ¶ 19, 22)]. Mr. Chapin doesn't seem to want to count these because he says Whitaker never received authorization from Forest River to do the repairs, so they were never actually

---

[2] "IT IS UNDERSTOOD AND AGREED THAT EXCEPT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW THE DEALER MAKES NO WARRANTIES WHATSOEVER REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT CONTAINED THEREIN. THE DEALER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE" [49 at 3 (Ex. A)].

[3] Forest River's exhibits include an unsigned affidavit from Jennifer Mitchell [49 at 4-7 (Ex. B)]. The court won't credit an unsigned affidavit and accordingly disregards it in this summary judgment decision. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(1)(A). This has no meaningful effect on the documents this affidavit purports to authenticate because the court can consider these documents so long as they could be rendered admissible, and they can. *See* Fed. R. Civ. P. 56(c)(2).

2

performed [56-1 ¶ 13; 57 ¶ 15-16], but his complaint notes them [34 ¶ 19, 22].[4] In April, Mr. Chapin sought repairs for an electrical conduit, a power-supply plug, a propane door and tank, a dent on the front, the shower floor, and a drain sealer [*id.* ¶ 19]. In June, he discovered problems with the floor; the stairs to and the door of the master bedroom; the kitchen counter and wallpaper; and the exterior outlet [*id.* ¶ 20-21]. There were also issues with the roof and side molding [*id.* ¶ 21-22].

On July 1, 2022, Mr. Chapin emailed Forest River to identify eighteen defects with the vehicle, writing, "My hope is you will ship me a new trailer and pick up this one, [d]ue to the time it will take to repair all of these items listed" [58 at 8 (Ex. 4)]. On July 5, 2022, Angie Smiley, a Forest River representative, emailed Mr. Chapin a list of service centers within 500 miles of his zip code [*id.* 9 (Ex. 5)]. Mr. Chapin received the email, but he felt that it was "tone-deaf" and had issues getting the vehicle repaired in time [56-1 ¶ 16-17]. That same day, he replied to Ms. Smiley that he could not find any shops willing to do the work until the end of the year and requested "this trailer be picked up from your transportation company and shipped back to the factory to do repairs needed" [58 at 14 (Ex. 6)].

On July 15, 2022, Mr. Chapin again emailed Forest River because he received no response to his last email; this time, he asked Forest River to "come pick up this trailer and refund me for all charges and payments" [*id.* 18 (Ex. 7)]. He testified that at that point, he was "not asking for the trailer to be repaired anymore" [49 at 17 (Ex. C Tr. 49-50)]. He received payment from Forest River for the April repairs in mid-August (and never cashed it); and, without Forest River's response to his July 15 email, he filed suit in California state court in August 2022 [56-1 ¶ 22-24]. Forest River moved to transfer the case to Indiana [58 at 19 (Ex. 8)]. In May 2023, Mr. Chapin refiled his case here [1].

---

[4] Mr. Chapin's decision to contest these at all puzzles the court—if the court determined that they were not repair attempts, he would be even less in compliance with the warranty's requirements. He would be short all three repair attempts, rather than just one.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

A.  *Song-Beverly Consumer Warranty Act.*

The Song-Beverly Act is a California consumer protection statute. *See* Cal. Civ. Code §§ 1792 *et seq*. It applies "only to vehicles sold in California." *Cummins, Inc. v. Superior Ct.*, 115 P.3d 98, 106 (Cal. 2005). It doesn't cover "California buyers who purchased their vehicle in another state." *Id.*; *see also Raymond v. Thor Motor Coach Inc.*, 2023 U.S. Dist. LEXIS 134020, 6 (N.D. Ind. Aug. 2, 2023).

Mr. Chapin points to *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp.2d 1138, 1155 (N.D. Cal. 2010), *vacated in part on other grounds*, *Kowalsky v. Hewlett Packard Co.*, 771 F. Supp.2d 1156 (N.D. Cal. 2011), for the proposition that Song-Beverly applies when California residents purchase products online while in

4

California, but that case actually held that a New Jersey resident wasn't entitled to Song-Beverly's protections for an online order that was processed and shipped out of California. *Kowalsky*, 771 F. Supp.2d at 1155. The law's application depends on where the vehicle was sold, and that turns on where title passes—if title passes in California, then the good was sold in California. *See Davis v. Newmar Corp.*, 136 Cal. App. 4th 275, 278 (Cal. Ct. App. 2006) ("Because title passed outside of California, the Act does not apply."); *Gusse v. Damon Corp.*, 470 F. Supp.2d 1110, 1113 (C.D. Cal. 2007) ("California law is clear that when title passes outside of California, the Song-Beverly Act does not apply.").

Where title passed depends on whether the parties had a shipment contract or a delivery contract, and the law presumes shipment contracts. *Cal. St. Elec. Ass'n v. Zeos Int'l Ltd.*, 49 Cal. Rptr. 2d 127, 131-32 (Cal. Ct. App. 1996); Cal. Com. Code § 2401(2). "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Cal. Com. Code § 2401(2). "[W]hen the parties agree to or contemplate shipment by the seller, title passes to the buyer upon that shipment, unless the agreement specifically requires the seller to make delivery at the destination." *Zeos*, 49 Cal. Rptr. 2d at 132. The contract's language controls if it is "clear and explicit." *Gusse*, 470 F. Supp.2d at 1114. Courts only look to external evidence if a contract is ambiguous. *Id.* If the contract doesn't specifically require delivery, it's not the court's job to "hunt about for other terms that could possibly imply a delivery contract if one squints." *Raymond*, 2023 U.S. Dist. LEXIS 134020 at 8.

Both defendants argue that this purchase occurred in Ohio, not California. Mr. Chapin counters that title has not passed yet because Couch's RV never delivered the title; and, if the dealer were to deliver the title now, it would pass in California. He also argues that Song-Beverly applies when a California resident purchases a product online.

5

The controlling question is where Mr. Chapin purchased the recreational vehicle—more precisely, where title passed. The defendants argue that the law presumes a shipment contract and that nothing in the purchase agreement contradicts this presumption. They note that the purchase agreement explicitly informed Mr. Chapin that title remained with the seller until such time as he paid the purchase price and thereupon title passed to him even though physical delivery might occur later. This provision, the defendants say, shows the agreement wasn't a delivery contract.

The defendants cite *Zeos*, 49 Cal. Rptr. 2d at 128. That case held that a computer company based in Minnesota that sold products to California consumers over the phone wasn't selling goods in California for the purposes of the Song-Beverly Act. *Id.* at 131-32. The court found a "shipment contract" because the paperwork contained "no provision requiring [the company] to deliver the goods to the buyer" and noted that the buyer paid shipping charges. *Id.* at 132. That meant title passed in Minnesota, not California. *Id.* In *Raymond,* 2023 U.S. Dist. LEXIS 134020 at 7-8, the court determined a contract was a shipment contract when it was "entirely silent on the terms or conditions of delivery" and was not explicit about the title's transfer. Including the shipping cost in the purchase price didn't change that. *See id.* (citing *Carlson v. Monaco Coach Corp.*, 486 F. Supp.2d 1127, 1131 (E.D. Cal. 2007)).

Title passed in Ohio. The purchase agreement clearly says title passes upon payment of the purchase price. This occurred in Ohio, with the recreational vehicle in Ohio (regardless of whether the unit was on a later date shipped to California by a third-party). The purchase agreement never says the passing of title is dependent on delivery, much less delivery to California. *See Carlson*, 486 F. Supp.2d at 1130. Quite to the contrary, in fact, the purchase agreement notes a "proposed delivery date" of March 18, 2022—the very same day the parties signed the agreement and financed the deal.[5] This agreement cannot then be viewed as a delivery contract. Instead, the agreement necessarily contemplated title passing

---

[5] Mr. Chapin also pleads that he paid for the travel trailer on March 18, 2022, through a down payment and financing [34 ¶ 17]. He is bound by this statement in his amended complaint. *Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022) ("An allegation in a complaint is a judicial admission that can be used against the plaintiff.").

in Ohio with later shipment to California by a third-party; and the rolled-in cost of that third-party expense into the purchase price, much like *Zeos* and *Raymond*, leaves this conclusion undisturbed. The dealer completed its performance in Ohio.

Mr. Chapin responds in several ways. First, he argues that his California residence alone should control where title passes. This is just incorrect under the law. Purchasers in California are not always entitled to Song-Beverly's protections. *See Zeos*, 49 Cal. Rptr. 2d at 132. Second, he focuses on the physical title, the document he says he has never received. This too is not dispositive. Title transferred at the time of payment—and expressly under the agreement, noting that this was true even though the title's physical delivery might come later. Third, Mr. Chapin argues that the place of the travel trailer's physical delivery should control. This too is just incorrect under the law. *See id.*; *Carlson*, 486 F. Supp.2d at 1129-30 (listing cases). And his attempt at a legal conclusion, offered in his declaration, about whether he believes title passed won't change the undisputed facts or express agreement.

Mr. Chapin also filed a request for judicial notice and an odd request to return the case to California, citing *Lathrop v. Thor Motor Coach, Inc.*, 105 Cal. App.5th 808 (Cal. Ct. App. 2024). This case was filed here by Mr. Chapin. He chose this venue. The court has no motion to transfer the case before it, nor could the court transfer this case to a state court based on this procedural history. And citing a case like *Lathrop* where Song-Beverly applied to argue a transfer in a case where Song-Beverly does not apply isn't cogent. The court grants summary judgment on the Song-Beverly claims.

B. *Magnuson-Moss Warranty Act (MMWA).*

Mr. Chapin also sues under the MMWA for breach of express and implied warranties against both defendants. Couch's RV requests summary judgment because it disclaimed all warranties in its purchase agreement. Forest River requests summary judgment because Mr. Chapin failed to comply with the limited warranty by not giving the company a reasonable opportunity to repair his vehicle.

7

1. *Couch's RV.*

The court must decide which state law informs the MMWA claims against Couch's RV. The parties agree to Ohio law based on the court's Song-Beverly ruling [54]. Given no evidence of an express warranty from the dealer or any contrary choice-of-law provision there, and given no other reason to apply different state law, the court adheres to the parties' agreement to Ohio law. *See Great West Cas. Co. v. Robbins*, 833 F.3d 711, 715 (7th Cir. 2016).

Mr. Chapin offers no evidence of an express warranty from Couch's RV, so the court confines its discussion today to any implied warranties against the dealer. Couch's RV argues that it disclaimed implied warranties. To disclaim an implied warranty of merchantability under Ohio law, "the language [in the disclaimer] must mention merchantability and in case of a writing must be conspicuous." Ohio Rev. Code § 1302.29(B). Similarly, language disclaiming the implied warranty of fitness for a particular purpose must also be "by a writing and conspicuous." Ohio Rev. Code § 1302.29(B). The disclaimer in the purchase agreement complied with Ohio law. *See, e.g., Antero Res. Corp. v. Tejas Tubular Prods.*, 610 F. Supp.3d 1047, 1055-56 (S.D. Ohio 2022). Mr. Chapin signed the two-page agreement, acknowledging he was aware of the waiver [49 at 2 (Ex. A)].

Mr. Chapin argues this disclaimer is unconscionable. He says the disclaimer wasn't clear or conspicuous, but he is wrong on both fronts. The purchase agreement was only two pages; the disclaimer appeared in all capital letters and underlined in differentiation from other text; it was plainly written; and Mr. Chapin signed the agreement and acknowledged that he read it all. *See, e.g., Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 639 (Ohio 1989); *Martin v. GMAC*, 160 Ohio App.3d 19, 25 (Ohio Ct. App. 2005) ("Failure to read the terms of the contract is not a valid defense to enforcement of the contract."). He says the disclaimer would leave him without a remedy for a defective product, but that isn't the case either. Dealers often disclaim warranties because they have received permission to pass through warranties from the manufacturers of vehicles. That is exactly what happened here. Mr. Chapin

8

thus had those remedies available in Forest River's limited warranty. The dealer's disclaimer isn't unconscionable on this record.

Mr. Chapin also argues that the MMWA prohibits the disclaimer. Under the MMWA, "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer [p]roduct, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." 15 U.S.C. § 2308(a). A warrantor of a consumer product under the MMWA is confined to limiting the duration of implied warranties, not disclaiming their existence. 15 U.S.C. § 2308(b). But Mr. Chapin points to no written warranty or service contract from Couch's RV that would make it a warrantor under the MMWA or that would trigger this statutory prohibition. *See* 15 U.S.C. §§ 2301(5), (6), (8), 2308(a). The dealer's disclaimer is enforceable as a matter of both state and federal law, so the court grants summary judgment on these warranty claims.

    2. *Forest River.*

Forest River asks for summary judgment on the MMWA warranty claims because Mr. Chapin failed to exhaust his remedies and comply with his contractual obligations—namely, by not giving Forest River enough attempts to repair the travel trailer under Indiana law. Mr. Chapin argues that he did provide Forest River with adequate attempts to repair.

The court has federal question jurisdiction. The MMWA provides the means to assert state law warranty claims in federal court, though the claims remain informed by state law. *See* 15 U.S.C. § 2310(d)(1); *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011); *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Both sides cite Indiana law; and, given no reason to depart from this choice and given the choice-of-law clause in Forest River's warranty, the court follows suit. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Indiana presumes the validity of this choice-of-law provision, *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002), and

9

no exceptional circumstances exist to upset its application here, *Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313, 1314-15 (Ind. Ct. App. 1988).

Under Indiana law, to prevail on an express warranty claim, a plaintiff must prove (1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages. *Celina Ins. Co. v. Indianapolis Roofing & Sheet Metal Corp.*, 953 N.E.2d 679, 679 (Ind. Ct. App. 2011); *see Litsinger v. Forest River, Inc.*, 536 F. Supp.3d 334, 364 (N.D. Ind. 2021). "[A]ny affirmation of fact or promise made by the seller to the buyer [that] relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Ind. Code § 26-1-2-313(1)(a). A seller breaches an express warranty when the goods fail to conform to the warranty, *see Martin v. Thor Motor Coach Inc.*, 602 F. Supp.3d 1087, 1094-95 (N.D. Ind. 2022), or when the warranty's remedy fails its essential purpose, *see Martin v. Thor Motor Coach*, 718 F. Supp.3d 907, 915-17 (N.D. Ind. 2024); *see also* Ind. Code § 26-1-2-719(2); *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021).

"Timely notice of a breach of warranty is a substantive condition precedent to recovery." *McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987). The warrantor must be given a reasonable opportunity to cure, often viewed as a reasonable time or a reasonable number of attempts at necessary repairs. *Zylstra*, 8 F.4th at 603, 606; *Litsinger*, 536 F. Supp.3d at 364-65. "Under Indiana law, two chances is not a reasonable opportunity to cure the defects such that the warranty failed of its essential purpose." *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019) (citing *Gen. Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004)). A "reasonable opportunity to cure, at least in cases where the defects are somewhat minor, and not affecting full use of the vehicle, means at least three chances." *Zylstra*, 8 F.4th at 603. Attempts to repair "have been undertaken if the nonconformity has been subject to repair . . . but continues to exist." *Gen. Motors Corp.*, 818 N.E.2d at 53.

Forest River's written warranty offered a repair remedy:

> Forest River's SOLE OBLIGATION under this Limited Warranty is to repair any covered Substantial Defect discovered within the applicable Limited Warranty Period if

10

not excluded under the terms of this Limited Warranty. If the authorized selling dealer or local independent authorized dealer does not adequately repair the RV, the Owner must provide written NOTICE by contacting Forest River IN WRITING at Post Office Box 3030, Elkhart, Indiana 46515-3030 and advise it of any Substantial Defect(s), including a list of the Substantial Defect(s), and provide Forest River (and not the authorized dealer) an opportunity to repair the RV. Forest River may require the Owner to deliver the RV to another authorized Forest River dealer or its factory facilities. Forest River, at its sole option, may cover the reasonable costs of transporting the RV to its factory. Refusal to allow Forest River an opportunity to repair the RV will void warranty coverage for the identified Substantial Defect(s) [49 at 9 (Ex. B-1)].

Forest River says Mr. Chapin failed to give the company at least three chances to repair the travel trailer. The record isn't detailed, but the parties seem to agree that Mr. Chapin presented the trailer to Whitaker for repairs on April 17, 2022 and June 22, 2022 [49 at 28-29 (Ex. D ¶ 17, 20)].[6] Mr. Chapin argues that he contacted Forest River "repeatedly between April and July of 2022," but Forest River never authorized repairs. He says the third request occurred in his July 5 email when he wrote to Forest River, "I'm requesting this trailer be picked up from your transportation company and shipped back to the factory to do repairs needed. Once repairs are finished the trailer shipped back to my home and inspected by me to make sure all the repairs had been done" [56-1 ¶ 19 (citing 58 at 14 (Ex. 6)]. He had sent a list of needed repairs on July 1 [58 at 8 (Ex. 4)].

Mr. Chapin characterizes his communications as a demand for repairs, but he then chose not to present the travel trailer to any of the servicers Forest River identified [*id.* 9 (Ex. 5), 14 (Ex. 6)], though the warranty permits Forest River to designate a service center for this warranty work [49 at 9 (Ex. B-1)]. And the law allows a warrantor like Forest River to designate representatives to perform duties under its warranty. *See* 15 U.S.C. § 2307; *Litsinger*, 536 F. Supp.3d at 366. Forest River gave him 70 options for service centers on July 5. No reasonable jury could find that he exhausted these options in the

---

[6] Mr. Chapin presented new defects in June that he didn't present in April. This means that even if the court assumed, for the purposes of argument, that his July email constituted a third opportunity to repair, Forest River would have only had a chance to repair certain of the defects two times. The court need not parse this issue defect-by-defect because there was never a third opportunity in July.

11

approximate hour or so that he responded back to Forest River, insisting instead that the company retrieve the unit and perform the repairs at its factory [58 at 14 (Ex. 6)].

No one has argued any unlawful tie-in arrangement, and Forest River's warranty cautioned Mr. Chapin that the company "[did] not control independent authorized dealerships or the scheduling of repairs at their facilities and [he] may encounter delays" [49 at 9 (Ex. B-1)]. Mr. Chapin waited ten days more without further response from Forest River before communicating his intent not to present the unit for repairs at a designated service center. In short, he never presented the unit to a designated service center to reasonably afford Forest River this third opportunity to repair the travel trailer. This is what the warranty required. This was his choice; but, in making this choice, he cannot now blame Forest River for not repairing the unit or justify skipping a contractually-required step and just sue. *See Martin*, 718 F. Supp.3d at 918 ("cannot sue in contract or through the MMWA for something [he] got"); *Raymond*, 2023 U.S. Dist. LEXIS 134020 at 17-18 (same).

No reasonable jury could find that Mr. Chapin complied with the written warranty or afforded Forest River a reasonable number of repair attempts under the law. Nor could a reasonable jury find that Forest River somehow waived—voluntarily and intentionally relinquished—its right to insist on his compliance with the warranty. Nothing shows that Forest River disavowed its obligation to repair the unit or refused to pay for a repair at a designated service center. Nothing on this record permits a reasonable jury to find that presenting the unit for repairs at one of 70 service centers would have been impossible or futile, or that Forest River had given Mr. Chapin a no-win or remedy-less scenario. Better customer relations might suggest the company would have been wiser to respond to Mr. Chapin's July 5 email, but one's silence alone doesn't constitute a waiver of a right. *See Tate v. Secura Ins.*, 587 N.E.2d 665, 671 (Ind. 1992); *Lavengood v. Lavengood*, 73 N.E.2d 685, 688 (Ind. 1947). Frustration because he preferred a different repair approach or another ideal timeline, despite the warranty's allowance, doesn't alone

12

vindicate a federal suit sounding in state warranty law. The court grants summary judgment for Forest River on the express and implied warranty claims, including as presented through the MMWA.

## CONCLUSION

Accordingly, the court DENIES AS MOOT the motion to strike [52] and the incorrect motion for summary judgment [46], DENIES the motion for oral argument [59], GRANTS the defendants' corrected motion for summary judgment [50], and DENIES the request to transfer [61]. The court directs entry of judgment for the defendants. This order terminates the case.

SO ORDERED.

December 9, 2024                                          *s/ Damon R. Leichty*
                                                           Judge, United States District Court